UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-21590-CIV-TORRES

CONSENT CASE

JAMES RIDINGER,

    Plaintiff,

vs.

33' SPEEDBOAT, HULL ID
NUMBER: EMO0331169A89, *in rem*,
AND JOHN TURCHIN, *in personam*,

    Defendants.
_____/

**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR INTERLOCUTORY SALE; DISMISSING CASE**

THIS CAUSE is before the Court upon Defendants' Motion for Summary Judgment [D.E. 32] and Plaintiff's Motion for Interlocutory Sale [D.E. 19]. The Court has reviewed the motions, the responses, and the record in the case. The Court also conducted a hearing on April 13, 2009. For the following reasons, Defendants' Motion for Summary Judgment is granted, Plaintiff's Motion for Interlocutory Sale is denied as moot, and the case is Dismissed.

*I.  BACKGROUND*

John D. Rockefeller once said that "a friendship founded on business is a good deal better than a business founded on friendship." The facts and circumstances of the case before us illustrate his point.

The following relevant facts are undisputed unless otherwise noted. Defendant John Turchin ("Turchin" or "Defendant") is the owner of the Defendant Vessel, a 33

foot Speedboat, Hull ID Number: EMO33169A89 ("Speedboat").  Plaintiff James Ridinger ("Ridinger" or "Plaintiff") is an experienced boater and also the owner of numerous various-sized vessels.  Both Turchin and Ridinger were once close friends.  Sometime in May 2003 they entered into an oral agreement for the use and maintenance of Turchin's Speedboat.  Under the terms of the agreement, both Turchin and Ridinger were free to use the Speedboat to their pleasure.  In exchange for enjoyment and use of the vessel, Ridinger provided the vessel with basic daily maintenance and care.  The parties agreed, however, to split the costs of any major repairs that had to be performed on the Speedboat.  Should any scheduling conflict arise for the use of the vessel, the parties agreed to mutually "work out" such conflicts.

The arrangement between the two friends worked for almost two years.  Then, sometime between 2006 and 2007, a dispute arose between the two friends about a certain real estate project they shared in North Carolina.  At that point, the friendship hit an iceberg.  According to the allegations listed in the Verified Complaint [D.E. 1], starting in April 2005, contrary to the terms of their agreement, Turchin failed to reimburse Ridinger his share for the repairs performed on the boat.  Apparently frustrated by Turchin's failure to pay, Ridinger refused to turn the boat over to Turchin until the money was paid.[1]  However, because Turchin was the rightful titled owner of the vessel, the police were called and helped him recover the Speedboat from Ridinger's possession.  This feud led to this lawsuit.

---

[1] Ridinger testified in his deposition that his "people told [Turchin's] people or him there is money owed on the boat, [he/Turchin] can have the boat back as soon as the money is paid." *See* Ridinger Deposition at 31 [D.E. 32-2].

Because the Speedboat that is the center of the dispute is a vessel capable of being subject to maritime liens, this Court has jurisdiction over the vessel *in rem*. Therefore, invoking this Court's admiralty jurisdiction under Fed. R. Civ. P. 9(h) and 28 U.S.C. § 1333, Ridinger filed an *in rem* action against the Speedboat and an *in personam* action against Turchin to recover the $19,895.16 he allegedly paid for the maintenance, repairs, upgrades and general upkeep of the vessel since approximately April 2005.[2]

On July 11, 2008, the United States Marshal arrested the vessel and the Speedboat became the custody of the Substitute Custodian, National Maritime Services, Inc. On December 2, 2008, Plaintiff filed his Motion for Interlocutory Sale asking this Court to order the Speedboat sold at a public auction so that the proceeds from the sale could be deposited into the registry of the Court pending the resolution of this matter. In support of his motion, Ridinger argued that the expense of keeping the property is excessive or disproportionate to the value of the vessel.

While Plaintiff's motion was still pending, Defendants filed their Motion for Summary Judgment contending that they are entitled to a judgment as a matter of law against Ridinger. According to Defendants, the undisputed facts establish that Ridinger was not entitled to assert a maritime lien against the Defendant vessel as a matter of law because Plaintiff created a joint venture with Turchin for operating and

---

[2] The *in personam* claim can be asserted in federal court only under the Court's supplemental jurisdiction to the maritime claim, because the complaint makes clear that both gentlemen are residents of Florida.

using the vessel.  Therefore, Defendants contend, Ridinger was not a "stranger" to the Speedboat and cannot maintain a maritime lien against it.

The Court held a hearing on April 13, 2009 during which the parties addressed the merits of both motions.  At the hearing, both parties essentially stipulated that the resolution of both motions turns on whether Ridinger's agreement and relationship with Turchin with regards to the use of the Speedboat amounted to a "joint venture." Because we answer that question in the affirmative, we grant Defendants' Motion for Summary Judgment and thereby dispose of the federal case that resulted from the parties' feud.

## II.  ANALYSIS

### A.  *Summary Judgment Standard*

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  Only when that burden is met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S.

317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). Thus, the non-moving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

### B. *Joint Ventures and Maritime Liens*

A maritime lien is a "special property right in the vessel, arising in favor of the creditor by operation of law as security for a debt or claim." *Equilease Corp. v. M/V Sampson*, 793 F.2d 598, 602 (5th Cir. 1986). The general purpose behind maritime liens is to keep vessels actively in the flow of commerce by safeguarding the interests of the owner and the secured parties. *See, e.g., P.T. Perusahaan Pelayaran Samudera Trikora Lloyd v. Salzachtal*, 373 F. Supp. 267, 275 (E.D.N.Y. 1974) (analyzing Congressional intent behind the Ship Mortgage Act of 1964). "The lien arises when the debt arises, and grants the creditor the right to appropriate the vessel, have it sold, and be repaid the debt from the proceeds." *Equilease*, 793 F.2d at 602. Under Federal law, a maritime lien exists in favor of "a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner." 46 U.S.C. § 31342(a).

While the presumption in favor of a maritime lien is strong, "[j]oint venturers cannot hold maritime liens because they are not 'strangers to the vessel.'" *Sasportes v. M/V Sol De Copacabana*, 581 F.2d 1204, 1208 (5th Cir. 1978) (quoting *Salzachtal*, 373 F. Supp. at 275). In other words, a joint venturer relies only on the credit of the co-venturer, not the credit of the vessel. *Fulcher's Point Pride Seafood, Inc. v. M/V "Theodora Maria,"* 935 F.2d 208, 211 (11th Cir. 1991). The "stranger to the vessel" exception doctrine is founded in the equitable notion that those who share

responsibility for incurring the debts of the vessel ought not be reimbursed out of that vessel's proceeds to the detriment of other lienholders. *E.g., Medina v. Marvirazon Compania Neviera, S.A.*, 709 F.2d 124, 125 (1st Cir. 1983).

In *Fulcher's Point*, the Eleventh Circuit described the basic elements of joint venture as:

> The parties' intentions are important. Joint ventures involve joint control or the joint right of control, and joint proprietary interests in the subject matter of the venture. Both venturers share in the profits, and both have a duty to share in the losses. But of course these elements cannot be applied mechanically. No one aspect of the relationship is decisive. . . . [These] factors are only signposts, likely indicia, but not prerequisites.

*Fulcher's Point*, 935 F.2d at 211 (citing *Sasportes*, 581 F.2d at 1208).

Under Florida Law:

> The relation of joint adventurers is quite similar to that of partnership, and is governed by the principles which constitute and control the law of partnership. It is an elemental principle that the relationship of joint adventurers is created when two or more persons combine their property or time or a combination thereof in conducting some particular line of trade or for some particular business deal. There must be an agreement to share jointly on some agreed basis in not only profits but also losses. The relationship must arise out of a contract, express or implied. . . . The contract need not, however, be expressed or be embodied in a formal agreement, or particularly specify or define the rights and duties of the parties. It may be inferred from the conduct of the parties or from facts and circumstances which make it appear that a joint enterprise was in fact entered into. The consideration for a contract of joint adventure may be a promise, express or implied, to contribute capital or labor to the enterprise.

*Kislak v. Kreedian*, 95 So. 2d 510, 515 (Fla. 1957) (quoting *Proctor v. Hearne*, 131 So. 173, 176 (Fla. 1930)); *see generally* 8B Fla. Jur.2d, *Business Relationships* §§ 749-64 (West 2003).[3]

---

[3] *Fulcher's Point* emphasized that the elements of joint venture are almost identical under Florida law to those listed in *Sasportes*.

With these principles in mind, we will next analyze the undisputed facts of the case.

### 1. *Intention of the parties to create a joint venture*

Both parties testified in their depositions that they entered into an oral agreement for the joint use of the Speedboat. *See* Ridinger Deposition at 8-9 [D.E. 32-2] & Turchin Deposition at 6-7 [D.E. 35-2]. Turchin, as the titled owner of the vessel, agreed to have the Speedboat stored at Ridinger's marina. Turchin further agreed for Ridinger to use the Speedboat at his pleasure.[4] In exchange, Ridinger agreed to provide the crew, daily maintenance and pay half for all major repairs that had to be done to the Speedboat. *See* Ridinger Deposition at 10 [D.E. 32-2].

There is thus undisputed evidence in the record that both parties entered into an oral agreement whose goal was joint maintenance and use of the Speedboat. Although the agreement was not for a traditionally commercial purpose, both parties clearly gained from the enterprise. For Turchin the agreement allowed for lower maintenance costs of the vessel, while for Ridinger it allowed for personal enjoyment of the Speedboat that he did not actually own. We, therefore, conclude that no genuine issue of fact exists in the record as to the parties' intent to enter into a joint venture.

### 2. *Joint control or joint right of control*

It is clear from his own testimony that Ridinger exercised day-to-day control over the vessel. He used the vessel at his convenience. He provided crew for the vessel. The Speedboat was docked at his residence. Finally, Ridinger placed the

---

[4] Ridinger testified in his deposition that "[he] could use [the boat] any time that [he] wanted." *See* Ridinger Deposition at 9 [D.E. 32-2].

Speedboat under his own fleet's insurance policy. *See* Ridinger Deposition at 9-12 [D.E. 32-2]. Although Turchin was the titled owner of the vessel and was also free to use it at his pleasure, this in it of itself does not negate the fact that both parties exercised joint control over the Speedboat.

Plaintiff's argument, that the fact that he sought permission from Turchin before he took the Speedboat on a trip to New York indicates lack of joint control of the vessel, is a red herring. The testimony of both Turchin and Ridinger clearly show that the purpose of the agreement was for both parties in the normal course to have easy at-will access to the use of the vessel. Clearly, taking the Speedboat over 1,000 miles north of its South Florida location is not in the normal course. Logic and common sense dictate that when one venturer attempts to utilize the subject matter of the venture outside of its ordinary scope, he should consult and warn the co-venturer. That is what happened on that one occasion. Over the vast majority of the parties' arrangement, however, the agreement to share control of the vessel predominated.

We, therefore, conclude that the evidence on the record only supports a finding of an existence of the joint control element of a joint venture.

### 3. *Joint proprietary interests in the subject matter of the venture*

As was previously noted, Ridinger exercised the day-to-day control of the Speedboat. Although Turchin was the titled owner, Ridinger was an apparent owner. Ridinger also insured the boat under his fleet's insurance policy. Most of all, however, Ridinger was free to use the Speedboat at his pleasure. Thus, we also conclude no genuine issue of fact exists to dispute the finding that Plaintiff had a proprietary interest in the vessel and its upkeep. *See Fulcher's Point*, 935 F.2d at 212 (finding that

a party that was not the titled owner of the vessel to have proprietary interest in it because the party insured the vessel and became its "operations" manager thus arguably the apparent owner of it).

### 4.  Right of both venturers to share in the profits and duty to share the losses

Arguably this prerequisite for a joint venture is a closer question because the agreement between Turchin and Ridinger was not for a traditionally commercial purpose.  In other words, the parties did not enter into the agreement in order to generate pure commercial profit.  Instead the enterprise was for purely personal benefit.

There was, nonetheless, non-commercial profit that both Turchin and Ridinger received from the venture. Turchin's profit was the reduced maintenance, storage, and overall upkeep costs associated with his Speedboat.  Ridinger's profit was his "at-will" personal use of the vessel.  One district court in the Eleventh Circuit found such personal use of a vessel to constitute "profit" within the meaning of joint venture.  In *Williams v. King*, No. CV 493-176, 1994 WL 463960 (S.D. Ga. July 15, 1994), the court found a joint venture where one of the parties to the action directly benefitted from his own maintenance of the vessel by using the vessel for his own enjoyment.  Like our case, in *Williams* the party attempting to disclaim his status as a joint venturer (1) used the vessel extensively for his personal enjoyment, (2) was the direct beneficiary of the maintenance tasks he performed and (3) occupied the position on the boat tantamount to that of an "owner."  *Id.* at *3.  The court concluded that these facts "squarely invoke[] the rationale behind the 'joint venture' exception: 'One who looks,

-9-

thinks, acts and profits like an owner' of the vessel cannot later claim a lien on that same vessel." *Id.* (citing *Fulcher's Point*, 935 F.2d at 213).

Applying that persuasive reasoning here, we readily conclude that this element also favors a finding of a joint venture between the parties.

### C.    *Ridinger is not a Stranger to the Vessel*

Considering the circumstances of this case in their entirety, we conclude that, as a matter of law, Ridinger was not a stranger to Turchin's Speedboat. Therefore he is precluded from holding a maritime lien against the vessel. As the Eleventh Circuit instructs us in *Fulcher's Point*, "the factors that indicate the existence of a joint venture do not have to be met point for point." *Fulcher's Point*, 935 F.2d at 213. Although the joint venture between the parties was not a typical "for profit" commercial enterprise, the agreement reaped benefits for both Turchin and Ridinger. Ridinger exercised significant control over the vessel, insured the vessel under his fleet's policy, and provided crew for the vessel. Most of all, by personally using the vessel for his own enjoyment, Ridinger was the direct beneficiary of any work he may have performed on the Speedboat. Furthermore, by using the vessel, Plaintiff directly contributed to its deterioration. Hence, Plaintiff may not rely on the vessel's credit to recover for any repairs he may have performed on the Speedboat after partly contributing to putting the vessel in the need of repairs in the first place.

Therefore, because undisputed facts establish that Plaintiff Ridinger was not a stranger to the vessel, we have no jurisdiction over the vessel *in rem* as a matter of law. Defendant Speedboat's  Motion for Summary Judgment is granted.  Plaintiff's *in personam* claim against Defendant Turchin must then be dismissed for lack of subject

matter jurisdiction as it is undisputed that diversity jurisdiction does not lie in this case. As a result, Turchin's recently filed counterclaim against Ridinger must be dismissed for the same reason. And, finally, Plaintiff's Motion for Interlocutory Sale must be denied as moot.

### III.  CONCLUSION

Based upon a thorough review of the record as a whole and the arguments presented by the parties in their motions and at the hearing, it is hereby **ORDERED** that:

1. *In rem* Defendant Speedboat's Motion for Summary Judgment [D.E. 32] is **GRANTED**. Plaintiff's *in rem* claim is **DISMISSED WITH PREJUDICE**.

2. Plaintiff's *in personam* claim in the Verified Complaint against Defendant John Turchin is **DISMISSED**. Plaintiff is free to re-file and pursue his *in personam* contractual claims, if any, against Defendant Turchin in state court.

3. Defendant's counterclaim [D.E. 53] is also **DISMISSED** and he, too, can consider whether he should pursue that claim in state court.

4. Plaintiff's Motion for Interlocutory Sale [D.E. 19] is **DENIED AS MOOT**.

5. All remaining pending motions, if any, are **DENIED** as moot.

6. This case is now **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 9th day of June, 2009.

                                                */s/ Edwin G. Torres*
                                                EDWIN G. TORRES
                                                United States Magistrate Judge